Our second case is 23-4701 United States v. Celedon. Mr. Bryant. Thank you. Good morning. May it please the court. My name is Patrick Bryant and along with my co-counsel Amy Austin, I represent the appellant Francisco Celedon in this appeal. At Mr. Celedon's supervisor lease revocation hearing, the district court committed procedural error by failing to address counsel's non-frivolous mitigating arguments for a shorter sentence than the statutory maximum sentence that the court ultimately imposed. Mr. Celedon made arguments that were specific to the revocation context in light of the 10-year sentence that the court had just imposed on the new criminal case. The district court failed to address any of them or explain why it was rejected. This court requires district courts to provide a thorough explanation for their sentences, but to the extent the court did offer any explanation, it relied on factors that are excluded from consideration in the revocation context, and for that reason this court should vacate the sentence and remand for a new hearing. Turning first to counsel's specific arguments that the district court did not address. First, and these start on page 47 of the appendix, counsel argued that 10 years was a sufficient sentence for the entire range of conduct, and that at that point in the proceedings, the parties knew that that was the sentence that Mr. Celedon had received in the new criminal case, and so counsel were able to shape their arguments in light of that sentence. And counsel said that 10 years was enough, particularly because that was higher than what the guidelines would have been had the mandatory minimum not applied. So it was already an elevated sentence, and therefore additional prison time for the revocation wasn't necessary. The court didn't specifically address that. Second, counsel argued that punishment was not a factor that the district court could consider in the revocation proceeding, and that's something that this court had already held and that the Supreme Court has since confirmed in the Asteris case. And then third, counsel argued that because Mr. Celedon was not a citizen and would be deported at the end of his sentence, he would not have access in the Bureau of Prisons to certain programs that would allow him to shorten his sentence. He certainly would not be eligible for a halfway house or home detention at the end of his prison sentence, and so therefore the time that he would serve would be longer and harsher than someone who committed an identical offense but was a citizen, and the district court didn't address that either. So thank you for that, Mr. Bryant. So is it your position that the court needed to tick through each one of those factors and explain why they didn't persuade him to not impose the sentence that ultimately was imposed in this case? I think that's this court's holdings, yes. Well, I thought we, I mean, I thought the cases say that a district court judge isn't required to robotically tick through the relevant factors, and part of that is that the arguments that the lawyer is making, and just to make the point, the additional point, you're right, the district court didn't identify each one by the chapter and verse, but he did say, and I'm looking at page 50 of the Joint Appendix, he said, Mr. Celedon, in a typical case, this court would find your attorney's presentation to be very, very compelling. Isn't that an acknowledgment that he understood those arguments or at least acknowledged them? I don't think that's sufficient. I think at most that's simply saying, I've heard what your counsel has said, and I don't think that's any different than saying in a case that I've considered the statutory factors, which this court has said isn't enough, and so I'm not, I'm not saying that the district court has to repeat word for word and parrot back what the counsel has said, and I think the phrase that this court has used in some cases is the central thesis, but when we're talking about non-frivolous arguments that are directly relevant to the length of the sentence, particularly in light of what had just gone on, the court has to at least acknowledge, I've heard that, and and explain not just that I've heard it, but why it's not compelling. When you read the judge's comments, he's really concerned about the massive breach of trust here, that you had the prior offense, what was it, in Alabama, and then, you know, the defendant had been required to serve time, and then he goes out and you have a huge amount of cocaine, which I would argue is probably relevant to the breach of trust, isn't it? So it wasn't the court looking at the amount of cocaine in terms of the egregiousness of the crime he committed, which we can't do, he was sentenced on that separately, but the court can look at breach of trust and the degree to which the defendant breached the trust, and that's what bothers me about this case, because when you read what Judge Hudson was saying throughout the transcript, he really seems concerned this defendant did not learn, and he was given an opportunity, and in a major way, pretty much thumbed his nose at the judicial system, so how do you answer that? Well, I understand that concern, I have three responses to that. One is that I don't think we can parse out from this transcript that clearly how much of this was a reference to a breach of trust versus the seriousness of the offense, and I think that the statements could very well be read to be a reference to the amount of drugs and treating that as a seriousness factor, which is something that is out of bounds for consideration in this context, so that's one. Second, in the Asteris case, the Supreme Court specifically reserved at footnote five whether breach of trust is even a relevant consideration, and said we're not going to get into that, but at least pose the question that breach of trust might not even be something that the statute will. I think you have to concede that our case law says that is something the court is allowed to consider. I understand, and that's certainly in the guidelines, but it is at least an open question, and if this Court says that breach of trust is all that we have here, then maybe you've given us a cert petition on that issue, because the Supreme Court is at least open to it. But the final thing I want to mention about the breach of trust is, I think it was already adequately taken into account by virtue of the fact that there is a revocation proceeding and a revocation guideline of 12 to 18 months, and so if the court was concerned about it, and then goes two to three times above the guideline range to impose the statutory maximum 36-month sentence, I think it was incumbent on the court to explain, even conceding there was a breach of trust, and even conceding that that's something the court could consider, why it was such an egregious breach of trust that not even 18 months was sufficient. And so I think particularly... I'm sorry to interrupt, that almost sounds like you're moving into an argument about substantive reasonableness, because if, well let me ask you, I'll ask you point-blank, if the court had ticked through all of those factors and said that the point that points you highlighted earlier, and said I understand those arguments, they are compelling in the abstract, but for the reasons that Judge Keenan highlighted about the amount of drugs involved and the fact that he had done this once before and did it yet again, I think an appropriate sentence in this case is the one that he landed on. It sounds like you're making the argument that there would be no justification, because there's nothing else that I can see in the record that the judge could have pointed to beyond what he pointed to for justifying his sentence. Well, I'll acknowledge that sometimes the distinction between procedural and substantive reasonableness can be a little fuzzy, and sometimes there's overlap in those considerations. We haven't specifically made that argument because I think the procedural reasonableness is an antecedent consideration for this court, and so I think when we get into that sort of speculation that if the court had gone through these steps, maybe it would have ended up in the same place, you know, then we're engaging in the guesswork that is not really the province of this court. Well, the government would say that that's an analysis with respect to harm and harmlessness. Isn't that relevant? I think that that is something that can be considered, but it's also notable that at the sentencing in the new criminal case, at the end of the proceeding, the court said that I would impose the same sentence regardless, even if there were any errors in the guideline, which is a dispute about the guideline, but I think that indicated that the court thought that 10 years was the appropriate sentence in that case regardless of the guideline or the mandatory minimum, but the court didn't say that in the revocation context, and so I think we can't presume that the court would come out exactly the same way if it had to go through and address specifically why those arguments weren't sufficient, especially if the court made very clear it was not considering the punishment factors, and here the court did. The court used phrases like the seriousness of the offense, and the court used on page 53 of the appendix, that's the price you pay for it. That sounds like retribution. That sounds like I'm punishing you. You're paying the price, and maybe there's another way that somebody could read that or construe that sentence, but I think the most obvious construction of it is punishment and retribution, and so if the court... Don't you think though, and I don't mean to interrupt you... No, please. You know this whole... I understand your breach of trust concern because it's kind of threading the needle a little bit in terms of acknowledging the need to avoid reference of punishment per se for the offense that occurred prior, not the earlier one. No, I understand. But here then, we have a situation where, as Judge Diaz said, there's not much else in the record, so you're saying your argument essentially comes down to do it right. Isn't that pretty much what you're saying to us, that we can glean perhaps what the judge intended, and it's pretty obvious, at least to my mind, and in fact I told one of my law clerks I took the bar exam with the trial judge in this case. I'm, you know, very familiar with him, but when you have a situation when the record speaks very clearly what was concerning the trial judge vis-a-vis whether the trial judge actually did it right, where does that leave us? Well, I think process matters. In terms of the case law. I think process matters, and I think this court has been very clear, even in the revocation context where the circuit court is more deferential to district judges, but Thompson, Slappy, Gibbs, Patterson, all of those are cited in the briefs, and all of those are revocation cases where this court found fault with the district court's procedure, and so I will acknowledge this is an experienced judge, and we were experienced lawyers in the case. Mr. Celedon is the one who doesn't have as much experience, and he's the one that it really matters if he hears it from the judge's lips. Well, Judge Hutchin would have said that your client had experience, and that's why he's in the position that he found himself. Well, he didn't have experience in the revocation context, and supervised release is a bit of a weird animal to understand, even for people who have a little bit of experience, and Mr. Celedon is not a career criminal. He has had run-ins with the law in the past, including what got us here to begin with, but he doesn't have a tremendously extensive criminal history, and so... But he makes his living dealing massive amounts of drugs. I don't think the record supports that he's anything more than an occasional courier. Well, did the record show the value of 13 pounds of cocaine? It was a significant amount, but we don't know how much he got out of that, but at a minimum, yes, I think process matters. I think it's important for defendants, at the end of the day, if they have to turn to their lawyer and say, why did he give me the maximum? The defendant deserves to hear that from the court, and so that's why we don't think it was sufficient here, and if we've had to spend all this time speculating and guessing and surmising about what the court must have thought, then there's been a failing, and we shouldn't have to do that. It should go back for the court to specifically address it, and again, specifically address it without reference to the forbidden factors. If there are no other questions at this point, I can reserve the remainder of my time for rebuttal. All right, thank you, Mr. Bryant. Mr. Gibbons. Good morning, Your Honors. May it please the court. My name is Shea Gibbons, and I proudly represent the United States of America in this case. There are three reasons why the court should affirm the revocation sentence imposed by Judge Hudson in this case. First, the sentence was procedurally reasonable because the district court considered the appropriate policy statements in Chapter 7 of the Sentencing Guidelines Manual. He considered the relevant 3553A factors, and then he addressed the defendant's non-frivolous arguments and explained why he rejected them. As the courts, as Your Honors mentioned, he said that in an otherwise, in another case, he would find them very, very compelling, but here his overriding considerations were the breach of trust committed by the defendant. But he didn't substantively address the arguments. That's correct. That were just referenced by Mr. Bryant. He didn't substantively address that he was ineligible for certain considerations because he was subject to removal. The fact that he was 47 years old and would be 57 went out of the penitentiary. These are not frivolous arguments, and I understand the government's position because, as I said in my question earlier, the record is really clear that the judge was concerned about a breach of trust. But what do we do? I mean, why wouldn't we just say to the trial judge, you know, you have to answer the non-frivolous arguments? We said it before in our case law, and just do it right. Yes, Your Honor. So we believe the judge did comply with these court's precedents for two reasons. First of all, he did address the central thesis of the defendant's arguments, which were the arguments that the defense attorney made in the original sentencing, and that was about the quantity of the drugs and the coercion, the alleged coercion of Mr. Celedon participating in this courier activity. There were some revocation-specific arguments that the court heard right after the defense made those arguments. That's when the judge said on Joint Appendix 50, otherwise I would find your attorney's arguments to be very, very compelling. But again, going back to his overriding two considerations, this court in Slappy said that the district judge either needs to mention a party's non-frivolous arguments or where the court provides a reason for why the judge rejected those arguments, and that's exactly what Judge Hudson did here. Counsel, don't we have to be careful when we talk about breach of trust? Isn't that always a question in revocation? Yes, Your Honor, it is always. So why does that make this not typical? Because when he talked about it, he talked about financial hardship for his family, to take care of his family, his fear of what the prize of the cartel, he had a small role as a courier, and the court acknowledged that these things would be persuasive if this was not typical. Okay, the typical part is the breach of trust. In all cases of revocation, correct? Yes, Your Honor. You wouldn't be there if you had not done something that breached the trust that says we're gonna let you on, right? So what did the court address to put this over the top to the point that I can put aside those non-frivolous reasons here and just by saying this is not typical? But it is typical. The other part is the retribution part that she's not supposed to use may be the part that what you're talking about is not typical, but it certainly doesn't make it not typical just because you breached trust. And these were some pretty substantial non-frivolous reasons. I mean, financial, I know it shouldn't be a reason, but it's one thing somebody has everything in the world and all their assets and that kind of thing to go out and commit crime. There's another, someone who had to put food on their family's table. Not to justify, but that's, or somebody's afraid of what's retribution to them, and they had a small role as a courier. How's that all put aside just because by saying this is not typical? Breach of trust is typical. It's every revocation case as breach of trust. So what in this record was not typical that would cause you to give max time, not even consider anything less than that in this record? Yes, Your Honor, and I believe that the judge was very clear about that. So as we indicated in the brief, and as the policy statements in Chapter 7 indicate, it's very easy to get... No, follow me, follow me. You're about to say what the judge did. I want to hear what the judge, I know what the statute said. What did the judge do? Yes, Your Honor. So he was, as Judge Keenan has mentioned repeatedly, he was overwhelmingly concerned with these two factors. And immediately after citing those two factors, and he says when posing the sentence. What two factors? The two factors were the seriousness of this violation as demonstrated, as it demonstrates a breach of trust, and the fact that this was a very similar crime to the one he had committed down in Alabama, and that it could happen so soon after he'd begun his period of supervised release. And that is not adequately accounted for in the policy range or the this is a mass... Yes, he was a courier, but he's a courier for a massive quantity of cocaine. And it's in the transcript, it's in the joint appendix, that this is over $100,000, the purchase price, and that's not the street price, but that's the purchase price of this cocaine. So engaging in this very serious conduct, which is allowed and accounted for in Chapter 7 of the policy statements, that says the district court's primary focus should be the breach of trust, while taking into account the seriousness of the underlying violation and the criminal history of the violator. And that's exactly what the court did here in accordance with Chapter 7 of the, excuse me, the policy statements in Chapter 7. I'm glad you brought that up because I think Mr. Bryant, if not in his argument, but in the brief, someone mentioned the fact that the court didn't mention the policy guidelines statements. What are we to make of that? Your Honor, it's clear if the district court does not say the magic words that he's considered the policy statements, it's clear that that was animating the court's decisions in this case. He mentions the breach of trust repeatedly and is specifically when imposing the sentence. And exactly what the policy 553A factors, the ones that are relevant to revocation, he repeatedly relies on those factors. And so, related to that, I guess the other thing he didn't mention, and correct me if I'm wrong, is an acknowledgment of what the guideline sentence was for this revocation offense. I think the government likely mentioned it, but the district court didn't mention it or acknowledge it. So, I mean, there's a lot of things that we would need to infer here about what the district court did and I think that's the concern here. Yes, Your Honor, and that's a legitimate concern. Or understood, what the district court understood. Yes, Your Honor, so it is correct that the assistant U.S. attorney at the hearing put the guidelines on the record. The court processed those, excuse me, I said guidelines, I should be more clear, it's the policy statement. Correct. Put those on the record and then the court said that he considered that in imposing the sentence. I believe that's on J. 50 and 51, that he'd considered that and used the language saying that in considering the scope of the defendant's breach of trust was imposing a sentence of 36 months, which he said was sufficient but not greater than necessary. To the district court, that means that the only appropriate and reasonable sentence for the district court was a 36-month sentence. Again, for the same two reasons that he says over and over and over again between the sentencing hearing and the revocation hearing. Can I ask you about what happened in the first half of the proceedings involving the original offense? There was a statutory minimum that was imposed and no, I think both parties decided to forego consideration of the 35-53A factors and the judge agreed with that. I don't think I've ever seen that before. It seems a bit unusual but how, if at all, are we to factor that in that the district court did not engage with those factors on the front end and so didn't have the benefit of those factors to the extent that they were relevant on the back end? Well, I do think, Your Honor, that the district court said that he had engaged with the 35-53A factors, the underlying hearing. In fact, I think he said that it would probably take him 20 minutes to put those, his district court did that in the underlying sentencing hearing and eight of the ten factors at the sentencing hearing are relevant in the revocation context. So the fact that the defense waived the reading of those statement of reasons sort of undermines, it's not necessarily a waiver, but it undermines the argument that he didn't explain himself well enough when he offered to put that on the record in the sentencing hearing and they're now, they're now disputing whether there was sufficient explanation in the revocation context. Do you have anything further? No, Your Honor. Thank you. Mr. Bryant. Thank you. Just a couple of points very, very briefly. I want to say that this is a case where the government specifically asked for punishment, asked the court to consider a punishment factor, which I didn't mention earlier, but I think that just goes to show that to the extent there is any ambiguity in what the district court was relying on, for the government to say now is the time to punish him and for the district court to immediately say, okay, now this is the price you pay. I think that that's the inference that we can take. With regard to the waiver of the reading of the 3553A factors at the original sentencing, I'll confess I've never seen that either. I think it was simply an indication that everyone agreed that ten years was a sufficient sentence in that case. It also makes it cleaner in this revocation case what the failure was because there certainly was no request for a waiver in the revocation context and I've had cases with these sort of dual proceedings where there's new criminal conduct and an immediate revocation and the district court will say I simply adopt everything I said at the earlier proceeding and carry that over and that makes it harder to argue that there wasn't a sufficient explanation at the revocation. We don't have it here. It's a much cleaner process, so to speak, that makes the absence all the more vivid and ultimately I think what this comes down to is in the new criminal case everyone believed that the statutory minimum was a perfectly adequate sentence and yet at the revocation context the court thought that nothing less than the maximum would do and there's that sort of internal inconsistency and illogic that I think at least needs to be explained why the minimum was totally fine in the earlier case but nothing less than the maximum would do here and I think at least spell that out, at least connect those dots is really all that we're asking for here and like you say I think process matters. I think hearing it from the court matters and there are factors that the court can't consider but unfortunately it did here and that's why we asked the court to vacate the sentence and remand for a new revocation here. Thank you. All right, thank you very much Mr. Bryant. Thank you both for your able arguments this morning. We're going to come down and do counsel and then take a very short recess before moving on to our third and final case. This honorable court will take a brief recess.
judges: Albert Diaz, Roger L. Gregory, Barbara Milano Keenan